# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

v.                                                  **Case No. 10-CR-91**

**GERARDO LOPEZ-ARELLANO**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Gerardo Lopez-Arellano pleaded guilty to unlawful re-entry after deportation, contrary to 8 U.S.C. § 1326, and I set the case for sentencing. In imposing sentence, the district court must first calculate the defendant's advisory sentencing guideline range, then determine the actual sentence on consideration of all of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Panice, 598 F.3d 426, 441 (7th Cir. 2010). This memorandum sets forth the reasons for my determinations on these issues.

## I. GUIDELINES

Defendant's pre-sentence report ("PSR") set a base offense level of 8 under U.S.S.G. § 2L1.2(a), then added 16 levels under § 2L1.2(b)(1)(A)(ii) because defendant was deported after his conviction for a crime of violence. The PSR then deducted 3 levels for acceptance of responsibility, § 3E1.1, for a final offense level of 21. Coupled with defendant's criminal history category of V, level 21 produced an imprisonment range of 70-87 months. Neither side objected to these calculations, which I found correct and adopted accordingly.[1]

---

[1]Defendant did object to the PSR's inclusion of a "recency" point under U.S.S.G. § 4A1.1(e), a provision that will be abolished effective November 1, 2010. I noted that while I

## II. SECTION 3553(a)

**A.  Sentencing Factors**

In imposing the actual sentence, § 3553(a) directs the sentencing court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct;  (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory] sentencing [guideline] range[;]

(5) any pertinent policy statement . . . issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

---

could consider this impending revision under § 3553(a), the first step in sentencing is to correctly calculate the guidelines, which should generally be done based on the version in effect at the time of sentencing. See U.S.S.G. § 1B1.10.  In any event, as defendant conceded, even without this point he still fell in criminal history category V, making the issue moot.  Defendant also objected to the absence of "cultural assimilation" departure information in the PSR.  As defendant noted, in the version of the guidelines set to go into effect November 1, 2010, the application notes to U.S.S.G. § 2L1.2 provide for such a departure. See United States Sentencing Commission, Amendments to the Sentencing Guidelines 16-18 (May 3, 2010) (U.S.S.G. § 2L1.2 cmt. n.8), available at http://www.ussc.gov.  I considered defendant's cultural assimilation – a recognized mitigating factor in § 1326 cases in both the pre- and post-Booker eras, see, e.g., United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 964 (E.D. Wis. 2005); United States v. Martinez-Alvarez, 256 F. Supp. 2d 917, 918 (E.D. Wis. 2003) (citing United States v. Rodriguez-Montelongo, 263 F.3d 429 (5th Cir. 2001); United States v. Sanchez-Valencia, 148 F.3d 1273 (11th Cir. 1998); United States v. Lipman, 133 F.3d 726 (9th Cir. 1998)) – under § 3553(a).  The factors the Commission will suggest courts consider under new application note 8 are quite similar to those identified in previous departure and variance decisions.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence sufficient, but not greater than necessary, to satisfy the purposes of sentencing set forth in § 3553(a)(2). While the district court must give the guidelines respectful consideration in making this determination, it may not presume that a guideline sentence is appropriate. Nelson v. United States, 129 S. Ct. 890, 892 (2009). Rather, the court must make an independent determination as to the appropriate sentence, taking into account the types of sentences available, the relevant § 3553(a) factors, and the arguments of the parties. See Gall v. United States, 552 U.S. 38, 49-50 (2007).

**B.     Analysis**

   **1.     The Nature of the Offense and the Characteristics of the Defendant**

Defendant, born in Mexico in 1983, first came to the United States with his family at the age of ten. Other family members obtained legal status in this country, either as citizens or legal residents, but defendant did not. He enrolled in an American school but dropped out after the seventh grade, joined a gang, and started getting into trouble with the law.

In September of 2002, at the age of eighteen, defendant was convicted of damaging property in Illinois, sentenced to 6 months in jail, then removed by immigration authorities to Mexico on October 4, 2002 near El Paso, Texas. He re-entered at Hidalgo, Texas in January 2003 by falsely claiming to be a citizen. In January of 2006, he was convicted of burglary in Illinois state court and placed on probation, but for reasons that do not appear in the record he was not removed from the country at that time. However, he was later arrested in Sheboygan County, Wisconsin for obstructing an officer, then removed to Mexico on October 20, 2006.

3

Defendant again re-entered illegally near Hidalgo on December 15, 2006. On August 13, 2007, he was convicted of attempted armed robbery in Sheboygan County and sentenced to 3 years probation with 90 days jail. He was released from that sentence to ICE custody, but then turned over to Illinois authorities to deal with a probation violation warrant in the burglary case. On November 30, 2007, he was sentenced to 3 years in prison on that matter. He was then released to ICE custody on February 29, 2008, and physically removed to Mexico on March 24, 2008.

Defendant returned illegally again on or about April 29, 2008, near Hidalgo, Texas, was arrested near the border, and then convicted and sentenced to 120 days for unlawful re-entry in the Southern District of Texas. ICE removed him on August 15, 2008, but he came back yet again and was found in this district on April 26, 2010 after officers responded to a loud music complaint at his residence in Sheboygan. When interviewed by ICE, defendant admitted that he came back illegally sometime after August 2008. In his statement to the PSR writer, defendant indicated that he returned to be with family in Sheboygan, to work, and to retrieve his truck. It appeared that all of his immediate family lived in the United States, mostly in the Sheboygan area. His family remained supportive and worried about what would happen when defendant returned to Mexico.

Defendant had one child, age seven, who lived with his mother in Michigan. He had not completed his education and his work record was patchy, perhaps due to his undocumented status. He also needed substance abuse treatment, given his abuse of alcohol, marijuana, and cocaine, as discussed in ¶¶ 72-76 of the PSR.

### 2. The Guidelines and the Purposes of Sentencing

The guidelines treated this matter very seriously, recommending a prison term of 70 to

4

87 months, and the government suggested a sentence within the range. I agreed that a prison sentence was necessary, primarily to deter defendant from continuing to re-enter unlawfully, as he had numerous times before, and to promote respect for immigration law. As I advised defendant at sentencing, he had to understand that, notwithstanding his familial situation and the circumstances in Mexico, unless his immigration status changed and he obtained permission he could not come back to this country.

However, for two reasons, I found a prison sentence below the range sufficient. First, while defendant's prior record at first blush appeared serious, suggesting a need to protect the public, on closer inspection I found his two prior felony convictions somewhat mitigated. The PSR indicated that in the attempted armed robbery case defendant was "armed" with a cologne bottle, not a more traditional weapon, and the victim was able to overpower and hold him for the police; the state court placed him on probation. Likewise, in the burglary case, the state court's decision to initially place him on probation suggested that this was not the most aggravated of offenses. Defendant nevertheless received the 16 level § 2L1.2(b)(1)(A) enhancement ostensibly reserved for the most serious crimes preceding removal. The court may, under § 3553(a), consider whether this enhancement overstates the seriousness of the offense and the need to protect the public. See Galvez-Barrios, 353 F. Supp. 2d at 962-63.

Second, I considered defendant's motive for returning to the United States, including his cultural assimilation to this country. See, e.g., United States v. Arguijo-Cervantes, 551 F. Supp. 2d 762, 765 (E.D. Wis. 2008); Galvez-Barrios, 355 F. Supp. 2d at 964; Martinez-Alvarez, 256 F. Supp. 2d at 920-22. Twenty-six years old at the time of sentencing, defendant arrived in the United States at the age of ten, when he came here with his family; he attended American schools from the third through the seventh grade, when he dropped out; and, aside from brief

5

periods in Mexico following removal, lived in the United States his entire adult life.  All of his immediate family members resided in the United States and upon his most recent return he re-united with them in Sheboygan, Wisconsin.  He appeared to have no close family or friends in Mexico.  Finally, he committed no new crimes during the latest re-entry period, coming to the attention of the authorities based on a loud music complaint.

Defendant requested a sentence of 30 months, but I found that inadequate to promote respect for the law and deter defendant returning illegally yet again.  Rather, I found a sentence of 48 months sufficient but not greater than necessary to satisfy the purposes of sentencing.  This represented a substantial term, far longer than any previous sentence he had served, but it also recognized the mitigating aspects of the case, including his cultural assimilation.  The sentence varied from the guidelines modestly, a bit more than 3 levels, and was based on recognized grounds for variance, present in this case, so it created no unwarranted disparity.

### III.  CONCLUSION

For these reasons and those stated on the record, I committed defendant to the custody of the Bureau of Prisons for  48 months.  I recommended that he be placed at an institution as close to his family as possible and participate in any substance abuse treatment available.  I imposed no supervised release, as it was not required by statute and defendant's near-certain removal from the country would preclude active supervision or treatment.  Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 26th day of October, 2010.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge